**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

American Premier Underwriters, Inc.,

    Plaintiff,                                                  Case No.  1:05cv437

    v.                                                       Judge Michael R. Barrett

General Electric Company,

    Defendant.

**OPINION & ORDER**

This matter is before the Court upon Defendant General Electric Company's ("GE") Motion for Summary Judgment on the Merits.  (Doc. 92).  Plaintiff American Premier Underwriters, Inc.'s ("APU") filed a Memorandum in Opposition (Doc. 123), and GE filed a Reply (Doc. 142).  GE has also filed a Notice of Supplemental Authority (Doc. 148), to which APU filed a Response (Doc. 149) and GE filed a Reply (Doc. 150).

**I.**    **BACKGROUND**

Plaintiff APU is the successor to the Penn Central Transportation Company ("Penn Central").  This action arises from contamination at four rail yards operated by Penn Central prior to April 1, 1976: (1) the Paoli Yard, located in Paoli, Pennsylvania; (2) the South Amboy Yard, located in South Amboy, New Jersey; (3) Sunnyside Yard, located in Long Island, New York; and (4) Wilmington Shops and related facilities, located in Wilmington, Delaware.  During the period when Penn Central operated these rail yards, it owned and used passenger rail cars with transformers manufactured by Defendant GE.  APU claims the GE transformers contaminated the rail yards by leaking polychlorinated biphenyls ("PCBs").  The PCBs were contained in "Pyranol," which was

the trade name of the fluid used by GE in the transformers as a cooling and insulating fluid. The transformers leaked or "burped" Pyranol when the pressure relief devices or valves on the transformers opened to relieve excess pressure. The transformers also leaked Pyranol around the welds and bushings in the transformers.

This Court previously ruled upon several summary judgment motions. (Docs. 151, 153, 154). As a result of those rulings, the only remaining issues raised by the current motion are as follows: (1) whether GE is entitled to summary judgment on the issue of whether GE is an "arranger" or "operator" under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675;[1] (2) whether APU's recoveries from collateral sources bar APU's claim for CERCLA response costs from GE; (3) whether APU's recoveries from collateral sources bar APU's claims for contractual indemnification; and (4) whether APU's state-law tort and statutory claims are preempted by the Locomotive Inspection Act.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The

---

[1] This Court previously ruled on APU's Motion for Partial Summary Judgment and found that APU was not entitled to summary judgment on this issue. (Doc. 154).

mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

### III. ANALYSIS

#### A. Arranger and operator liability under CERCLA

In ruling on APU's Motion for Partial Summary Judgment on the Issues of Defendant's Arranger and Operator Liability, the Court set forth the framework under CERCLA for establishing liability for the costs associated with the cleanup of hazardous waste sites. (Doc. 154, at 4).

As to the issue of whether GE is an arranger under the statute, the Court applied the legal standards established by the Supreme Court in *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599 (2009). Applying these legal standards to the undisputed facts regarding the leaking of PCBs, the Court found that GE was not subject to arranger liability under CERLCA. (Id. at 9).

However, the Court found that there were genuine issues of material fact as to whether GE was an "operator" under the Act. (Id. at 15).

For the same reasons, the Court grants GE's motion to the extent that it seeks summary judgment on the issue of whether GE is an arranger under CERCLA and denies GE's motion to the extent that it seeks summary judgment on the issue of whether GE is an operator under CERCLA.

#### B. Recoveries from collateral sources

The parties are in agreement that the collateral source rule does not apply to CERCLA claims or contractual indemnification claims. The parties also agree that APU

is not permitted to recover the same response costs and damages twice: once under its CERCLA claim from GE, and twice from its insurers. However, the parties disagree as to how and when this rule should be applied.

GE argues that APU seeks response costs from GE in the amount of $50,425,074, even though APU has recovered $59,941,977 from its insurers in settlements of litigation for response costs. APU responds that a ruling on this issue is premature and evidence of insurance recoveries should only be considered as a part of the Court's allocation determination. APU argues further that there are genuine issues of material fact as to the proper allocation. APU points out that amount it has recovered from its insurers resulted from insurance coverage of thirty-two known, in addition to unknown environmental contamination sites, not just the sites at issue in this case.

CERCLA provides: "In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). While there are instances where summary judgment is appropriate on the issue of allocation, *see*, *e.g.*, *Friedland v. TIC– The Indus. Co.*, 566 F.3d 1203 (10th Cir. 2009), the Court finds that at this point in this litigation, there are genuine issues of material fact which preclude the Court from making any determinations regarding allocation. GE does not dispute that the amount APU has recovered from its insurers includes response costs for sites other than the sites at issue in this case.[2] Moreover, as the Sixth Circuit has explained: "Recovery of response costs by a private party under CERCLA is a two-step process. Initially, a plaintiff must prove that the defendant is liable under CERCLA. Once that is

---

[2] The Court notes that as a result of its ruling on GE's Motion for Summary Judgment on Statute of Limitations Issues, APU's CERCLA § 113(f) claim is limited to certain costs incurred at the Paoli site. (Doc. 151).

4

accomplished, the defendant's share of liability is apportioned in an equitable manner." *Kalamazoo River Study Group v. Menasha Corp.*, 228 F.3d 648, 656-57 (6th Cir. 2000) (quoting *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 934 (8th Cir. 1995)).

Therefore, the Court denies GE's motion to the extent that it seeks summary judgment on the issue of allocation of the amounts APU received from its insurers.

### C. Locomotive Inspection Act

GE argues that APU's state-law tort claims and state statutory claims are preempted by the Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701, *et seq.*[3] Following this Court's ruling on GE's Motion to Dismiss (Doc. 60) and GE's Motion for Summary Judgment on Statute of Limitations Issues (Doc. 151), the remaining state law claims are: Count VII – contribution under the Pennsylvania Hazardous Sites Cleanup Act ("PHSCA") based on certain costs incurred at the Paoli site; Count XI – trespass at the Wilmington site under Delaware law; Count XII – negligence at the Wilmington site under Delaware law; Count XIII – private nuisance at the Wilmington site under Delaware law; Count XIV – public nuisance at the Wilmington site under Delaware law; Count XV – abnormally dangerous activity at the Wilmington site under Delaware law;

---

[3]The LIA provides as follows:

A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances-

(1) are in proper condition and safe to operate without unnecessary danger of personal injury;

(2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and

(3) can withstand every test prescribed by the secretary under this chapter.

49 U.S.C. § 20701.

5

Count XVI – strict liability at the Wilmington site under Delaware law; Count XVII negligent design at the Wilmington site under Delaware law; Count XVIII – negligent manufacture at the Wilmington site under Delaware law; and Count XIX – failure to warn at the Wilmington site under Delaware law.

After the parties briefed the current motion, the Supreme Court decided *Kurns v. Railroad Friction Products Corp.*, 132 S.Ct. 1261 (2012). In *Kurns*, a former locomotive repairman, Corson, and his wife brought state-law tort claims for defective design and failure to warn against the manufacturers of locomotive brake pads and engine valves. *Id.* at 1264. The plaintiffs alleged that the asbestos contained in the manufacturers' products caused Corson to develop malignant mesothelioma. *Id.* The Supreme Court concluded that the plaintiffs' claims were pre-empted by the LIA. *Id.* at 1265.

The Supreme Court explained that in its prior decision, *Napier v. Atlantic Coast Line R. Co.*, 272 U.S. 605, 611 (1926), it had held that that LIA preempted "the entire field of regulating locomotive equipment." *Id.* at 1267 (quoting *Napier*, 272 U.S. at 611). The plaintiffs attempted to argue that their claims did not fall within the LIA's pre-empted field because the claims arose out of the repair and maintenance of locomotives, not the use of locomotives on a railroad line. *Id.* However the Court rejected that argument, explaining that in Napier:

> the Court did not distinguish between hazards arising from repair and maintenance as opposed to those arising from use on the line. The pre-empted field as defined by *Napier* plainly encompasses the claims at issue here. Petitioners' common-law claims for defective design and failure to warn are aimed at the equipment of locomotives. Because those claims "are directed to the same subject" as the LIA, *Napier* dictates that they fall within the pre-empted field.

*Id.* (citations omitted).

Next, the plaintiffs argued that even if the defective design claim was pre-empted, their claims based on the failure to warn were not pre-empted. *Id.* at 1268. The Court rejected this argument, explaining that "the 'gravamen' of petitioners' failure-to-warn claims 'is still that [Corson] suffered harmful consequences as a result of his exposure to asbestos contained in locomotive parts and appurtenances.' Because petitioners' failure-to-warn claims are therefore directed at the equipment of locomotives, they fall within the pre-empted field defined by *Napier*." *Id*. The Court explained this conclusion in more detail:

> A failure-to-warn claim imposes liability on a particular design of locomotive equipment unless warnings deemed sufficient under state law are given. This duty to warn and the accompanying threat of liability will inevitably influence a manufacturer's choice whether to use that particular design. By influencing design decisions in that manner, failure-to-warn liability has a "'direct and substantial effect'" on the "physical elements" of a locomotive.

*Id.* at 1268, n.4.

The plaintiffs' third argument was that their claims were not pre-empted because the claims were brought against manufacturers, who were not regulated under the LIA at the time that Corson was allegedly exposed to asbestos. *Id*. However, the Court explained:

> This argument fails for the same reason as the two preceding arguments: It is inconsistent with *Napier*. *Napier* defined the field pre-empted by the LIA on the basis of the physical elements regulated—"the equipment of locomotives"—not on the basis of the entity directly subject to regulation. Because petitioners' claims are directed at the equipment of locomotives, they fall within the pre-empted field.

*Id*. at 1269 (citation omitted).

Finally, the plaintiffs argued LIA's pre-empted field did not include its common-law claims. *Id*. However, the Court explained that *Napier* held:

7

> that the LIA "occup[ied] the entire field of regulating locomotive equipment" to the exclusion of state regulation. . . . That categorical conclusion admits of no exception for state common-law duties and standards of care. As we have recognized, state "regulation can be . . . effectively exerted through an award of damages," and "[t]he obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy."

Id. (quoting *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247 (1959)).

In its supplemental briefing on the Supreme Court's decision in *Kurns*, APU appears to concede that its state-law tort claims fall within the field of locomotive equipment regulation pre-empted by the LIA. However, APU maintains that its state law environmental claims are not pre-empted.

At this stage of the litigation, APU's only remaining state law environmental claim is a claim for contribution under the Pennsylvania Hazardous Sites Cleanup Act ("PHSCA") based on certain costs incurred at the Paoli site. APU argues that the subject matter of this statute is environmental pollution and remediation, and therefore the PHSCA does not fall within the field pre-empted by the LIA. However, in *Kurns*, the Supreme Court noted that a similar argument was rejected in *Napier*:

> The Court rejected the States' contention that the scope of the pre-empted field was to "be determined by the object sought through the legislation, rather than the physical elements affected by it." The Court found it dispositive that "[t]he federal and the state statutes are directed to the same subject—the equipment of locomotives." Because the States' requirements operated upon the same physical elements as the LIA, the Court held that the state laws, "however commendable or however different their purpose," fell within the LIA's pre-empted field.

132 S.Ct. at 1266 (citations omitted).

While Justices Kagan and Sotomayor, in separate opinions, doubted that the Court would decide *Napier* in the same way today, Justice Kagan explained that "*Napier* governs so long as Congress lets it—and that decision provides a straightforward way

8

to determine whether state laws relating to locomotive equipment are preempted." *Id.* at 1270 (Kagan, J., concurring). Justice Kagan explained further that according to *Napier*, the scope of the agency's power under the LIA determines the boundaries of the preempted field, and in *Napier*, the federal agency's delegated authority was over "the design, the construction and the material of every part of the locomotive." *Id.* (quoting *Napier*, 272 U.S. at 611).

Accordingly, this Court concludes that because the LIA and PHSCA "are directed to the same subject—the equipment of locomotives," APU's claim under the PHSCA is pre-empted by the LIA. Therefore, the Court grants GE's motion to the extent that it seeks summary judgment on the issue of pre-emption of APU's state-law tort claims and state statutory claims under the LIA.

## IV. CONCLUSION

Based on the foregoing, Defendant General Electric Company's Motion for Summary Judgment on the Merits (Doc. 92) is hereby **GRANTED in PART and DENIED in PART**:

1. GE's Motion is GRANTED to the extent that it seeks summary judgment on the issue of whether GE is an arranger under CERCLA;

2. GE's Motion is DENIED to the extent that it seeks summary judgment on the issue of whether GE is an operator under CERCLA;

3. GE's Motion is DENIED to the extent that it seeks summary judgment on the issue of allocation of the amounts APU received from its insurers; and

4. GE's Motion is GRANTED to the extent that is seeks summary judgment on the issue of pre-emption of APU's state-law tort claims and state statutory claims under the LIA.

APU's remaining claims are as follows: Count I – cost recovery and declaratory relief under CERCLA § 107(a) based on removal activity at the Sunnyside and

Wilmington sites; Count III – contribution and declaratory judgment under CERCLA § 113(f) based on certain costs incurred at the Paoli site; Count IV – contractual indemnification relating to the Silverliner IV cars; Count V – contractual indemnification relating to the Jersey Arrow II cars; Count XXII – punitive damages; and Count XXIII – assignment of SEPTA, Amtrak and Conrail's claims.

**IT IS SO ORDERED.**

                                                */s/ Michael R. Barrett*
                                                JUDGE MICHAEL R. BARRETT